UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.  ) <br> ) <br> LAUREN STEVENS, ) <br> ) <br> Defendant. ) <br> ) | **FILED UNDER SEAL** <br><br> No. 10-cr-694-RWT |

**DEFENDANT'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR DISCLOSURE OF THE GOVERNMENT'S
PRESENTATION TO THE GRAND JURY RELATING TO THE
ADVICE OF COUNSEL DEFENSE AND 18 U.S.C. § 1515(c)**

In response to this Court's sealed Order dated March 10, 2011 (received March 14, 2011) (ECF No. 88), Defendant Lauren Stevens, through counsel, respectfully submits this second supplemental brief in support of her motion for disclosure of grand jury transcripts (ECF No. 25).

## BACKGROUND

The Court has directed the parties to address the effect of the following exchange that took place before the grand jury sitting in this District. For ease of reference in the argument that follows, we have numbered the paragraphs of this transcript excerpt, and highlighted the portions discussed in the argument below:

> [1] MR. JASPERSE: Do the Grand Jurors have any legal questions for Ms. Bloom or I?
>
> [2] A JUROR: I have a question. Does it matter that maybe she was—that Lauren Stevens was getting direction from somebody else about how to handle this? **Does it matter or is it not relevant?**
>
> [3] MR. JASPERSE: There is something in the law called the advice of counsel defense and that is a defense that a defendant can raise, **once the defendant has been charged.**

[4] **There are also exceptions** to the advice of counsel defense. So in other words, a person who is charged with a crime cannot simply say, Well, my lawyer said it was okay. There are various requirements, including that the purpose in getting the advice cannot be to commit a crime or to engage in fraud. Another requirement is that the person receiving the advice must provide full information, all of the information, to the attorney who is rendering the advice.

[5] MS. BLOOM: And I think **essentially if the elements of the crime are met, that the person knows that they are submitting a false statement and—what the advice of counsel defense goes to is if someone reasonably relies on someone else to believe that they are not committing a crime, but when—if you have an attorney who knowingly submits a false statement— and I think you saw some evidence—you know, would that person know that that's a crime.**

[6] So, that **while it can be relevant at trial** what a person knows and who else gave them advice, **if you find probable cause for the elements here that the attorney Lauren Stevens reasonably knew that she was making false statements and the elements that Patrick went through, then that's sufficient to find probable cause.**

[7] Does that help?

[8] A JUROR: Yes.

Order at 1-2 (quoting G.J. Tr. Nov. 8, 2010) (emphasis added). (References below to untitled paragraphs (¶ 1, etc.) refer to the paragraphs set out above.)

## ARGUMENT

The grand jury is a check against unfounded prosecution—a bulwark between the accuser and the accused. *See Wood v. Georgia*, 370 U.S. 375, 390 (1962); *United States v. Mandujano*, 425 U.S. 564, 571 (1976). "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.'" *United States v. Calandra*, 414 U.S. 338, 343 (1974). The grand jury's function is not only to determine whether probable cause exists to charge an offense; it is also to protect from prosecution those for whom criminal charges are unfounded. *See id.* (citing *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1974)).

The grand jury cannot serve this independent function if it is misinformed about the law that determines whether there is probable cause that the individual to be charged has or has not committed the offense under consideration. Here, however, in response to a grand juror's specific inquiry, the prosecutors instructed the grand jury that Ms. Stevens' reliance on counsel was not to be considered by the grand jury. This instruction was plainly contrary to applicable law and severely prejudiced Ms. Stevens. In light of the grand juror's question and the evidence before the grand jury, the erroneous instruction was clearly a substantial factor in the grand jury's decision to charge. Accordingly, under *Bank of Nova Scotia,* the Court should correct the serious errors that substantially influenced the outcome of the grand jury proceedings by dismissing the Indictment.

A. **The Instructions Given By the Government Plainly Were Incorrect and Highly Prejudicial**

As described above, a member of the grand jury that indicted Ms. Stevens asked the following question about the fact that Ms. Stevens received advice and direction from others when responding to the FDA: **"Does it matter or is it not relevant?"** ¶ 2, *supra* (emphasis added). In response, the prosecutors effectively told the grand jury that the advice of counsel defense could be relevant *at trial after indictment* if raised by the defendant, but (by implication) was *not relevant* to the grand jury's decision whether to indict.

The first prosecutor to speak told the grand jury that the advice of counsel defense can be raised *"once the defendant has been charged."* ¶ 3, *supra* (emphasis added). The second prosecutor reinforced this erroneous instruction. ¶ 6, *supra* (". . . while it can be relevant at trial . . ."). Each of the prosecutors thus misinstructed the grand jury by incorrectly telling it that "while [the defense] can be relevant at trial," *id.*, the fact that Ms. Stevens was advised by counsel was **not**

- 3 -

relevant for consideration by the grand jurors in determining whether probable cause existed to charge.

There is no other logical interpretation of the quoted exchange. The government's most recent brief attempts to obscure the true import of the exchange by selectively stating that grand jurors were told that "advice of counsel is a defense" and that the government "described it as a generally available defense." Gov. Supp. Mem. at 2, 8. What is omitted in this characterization, however, is the fact that each of the prosecutors actually described the advice of counsel defense as "available" only "at trial," ¶ 6, "once the defendant has been charged," ¶ 3. The lack of any follow-up to the prosecutors' otherwise incomprehensible description of the role advice of counsel might play can only be taken to mean that the juror mistakenly believed (based on the incorrect instructions of the prosecutors) that the grand jury should *not* consider the advice Ms. Stevens received. This lack of follow up is all the more significant given that a grand juror independently had recognized that Ms. Stevens' reliance was relevant to her intent.

The erroneous impression created by the prosecutors' incorrect statements that the advice of counsel defense need only be considered "at trial" (¶ 6) was compounded by other parts of the colloquy provided. Nowhere did the prosecutors actually respond to the question asked—which the prosecutors immediately understood to refer to the advice received by Ms. Stevens—by explaining the essential principle: that if a person sincerely believed or intended that her actions were lawful based on advice that she received from informed counsel, then there is no probable cause to believe that the person has violated the law.[1]

---

[1] *See* 1 Sand et al., ¶ 8.04 Instr. 8-4 ("In short, you should consider whether, in seeking and obtaining advice from a lawyer, the defendant intended that her acts shall be lawful. If she did so, **it is the law that a defendant cannot be convicted of a crime which involves willful and unlawful intent, even if such advice were an inaccurate construction of the law.**") (emphasis added).

Instead, prosecutors focused first on "exceptions" that would make an advice of counsel defense *inapplicable,* without ever instructing the grand jury as to the circumstances where the defense would be *applicable. See* ¶ 4 ("There are also exceptions . . . .").

Then, after the first prosecutor told the grand jurors that Ms. Stevens' reliance on the advice of counsel would only apply "once the defendant has been charged" (and that even then it had "exceptions"), the second prosecutor added:

> And I think essentially if the elements of the crime are met, that the person knows that they are submitting a false statement and—what the advice of counsel defense goes to is if someone reasonably relies on someone else to believe that they are not committing a crime, but when—if you have an attorney who knowingly submits a false statement—and I think you saw some evidence—you know, would that person know that that's a crime.

¶ 5, *supra.*

While it is difficult to make out what precisely the second prosecutor was trying to convey regarding the substance of the defense, it is clear that this statement did *not* instruct the jury that if it found good faith reliance, then Ms. Stevens would lack the willful or wrongful intent necessary to be charged with the alleged crimes. Rather than providing such an instruction, the prosecutor told the grand jury that if it found that Ms. Stevens acted *knowingly* (with no mention of wrongfully or willfully), that would be sufficient for the grand jury's purposes.

This is precisely backward. The whole point of the advice of counsel defense is that, where the defendant sought legal advice, fully disclosed the facts relevant to that advice, and relied in good faith on that advice, the individual therefore sought to act lawfully, and thus did *not* act with unlawful or wrongful intent.[2] The prosecutor's answer to the grand juror's question ex-

---

[2] *See United States v. Miller,* 658 F.2d 235, 237 (4th Cir. 1981) (explaining that "[t]he reliance defense . . . is designed to refute the government's proof that the defendant intended to commit the offense" where there was "full disclosure of all pertinent facts" and "good faith reliance" on the advice); *United States v. Painter,* 314 F.2d 939, 943 (4th Cir. 1963) ("If in good faith reliance upon legal advice given him by a lawyer to whom he has made full disclosure of

plained none of this. Instead, the prosecutor told the grand jury that if it found the target knowingly submitted a false statement, then that person therefore knew she was committing a crime, which was "sufficient" to indict. ¶ 6, *supra*. Such a response was clearly an incorrect statement of law, and further aggravated the prosecutors' prior prejudicial error of effectively instructing the grand jury that the advice of counsel defense did not apply at the charging stage.

### B. Because Good Faith Reliance on the Advice of Counsel Negates Criminal Intent, it is Critical that the Grand Jury Be Permitted to Consider Such Reliance Prior to Indictment

The government contends it was required only to instruct the grand jury regarding the elements of the offenses for which it sought to show probable cause, and maintains it did not have to instruct regarding advice of counsel because that is an affirmative defense. *See* Opp. at 11; Gov. Supp. Br. at 5-6. The government is doubly wrong.

First, in this case the prosecutors affirmatively asked the grand jurors if the jurors "have any legal questions." ¶ 1. In response, a grand juror specifically sought clarification regarding the legal importance of the advice received by Ms. Stevens. Having asked for questions, and having received a legitimate question in response, the prosecutors cannot now argue that they could then provide an *inaccurate* response to the question they solicited. *See, e.g., United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995) ("the government's creation or acceptance of an erroneous impression ... could support" dismissal of the indictment); *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979) (government may not mislead the grand jury or engage in fundamentally unfair tactics before it). This simple fact by itself refutes the government's claim that it had no duty to provide a proper instruction here.

---

the facts, one engages in a course of conduct later found to be illegal, the trier of fact may in appropriate circumstances conclude that the conduct was innocent because 'the guilty mind' was absent."); *see also* 1 Sand et al., ¶ 8.04 Instr. 8-4, *supra* n.1.

Second, the government is wrong in characterizing reliance on advice of counsel as an affirmative defense. Though it is often referred to colloquially as the "advice of counsel defense," good faith reliance on counsel is not an affirmative defense—that is, it is not a defense to liability even where all elements have been proven. *See* Black's Law Dictionary, "Affirmative Defense" (9th ed. 2009) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."); *Oakley, Inc. v. Bugaboos Eyewear Corp.*, 2010 U.S. Dist. LEXIS 123976, *11-12 (S.D. Cal. Nov. 23, 2010) (just because the "'advice of counsel defense' contains the word defense . . . does not an affirmative defense make"). Instead of being a full defense to liability, good faith reliance on advice of counsel simply shows the absence of wrongful intent. *See, e.g., United States v. Linden*, 254 F.2d 560, 568 (4th Cir. 1958) ("That the defendants proceeded under advice of a lawyer is a fact to be considered together with other facts in determining the question of the defendants' good faith, but legal advice does not under all circumstances constitute an impregnable wall of defense.") (citing *Miller v. United States*, 277 F. 721, 726 (4th Cir. 1921)); *see also United States v. Peterson*, 101 F.3d 375, 381 (5th Cir. 1996) ("A good faith reliance on the advice of counsel is not a defense to securities fraud. It is simply a means of demonstrating good faith and represents possible evidence of an absence of any intent to defraud.").

For this reason, courts have expressly held that "reliance on counsel's advice is not an affirmative defense" because "it is simply a means of demonstrating good faith and represents possible evidence of an absence of any intent to defraud," *United States SEC v. Snyder*, 292 Fed. Appx. 391, 406 (5th Cir. 2008) (following *Petereson*); *accord Oakley*, 2010 U.S. Dist. LEXIS 123976, at *11-12 (quoted *supra*; good faith reliance not an affirmative defense but rather "is relevant to determining whether it acted with intent to deceive"); *LG Philips LCD Co. v. Tatung*

*Co.*, 243 F.R.D. 133, 137 (D. Del. 2007) (quoting *Sanden v. Mayo Clinic*, 495 F.2d 221, 224 (8th Cir. 1974)) (advice of counsel is a not a true affirmative defense because "[a] defense which 'merely negates some element of plaintiff's *prima facie* case is not truly an affirmative defense").

The Fourth Circuit has repeatedly made clear that good faith reliance on counsel goes to whether the government has proved the element of wrongful intent. *See, e.g., United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981) ("The reliance defense . . . is designed to refute the government's proof that the defendant intended to commit the offense."); *United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963) ("In judging whether the defendant's behavior was honest or corrupt, [his reliance on legal advice] is a circumstance the jury was entitled to weigh and consider as part of the entire context of the case. If in good faith reliance upon legal advice given him by a lawyer to whom he has made full disclosure of the facts, one engages in a course of conduct later found to be illegal, the trier of fact may in appropriate circumstances conclude that conduct was innocent because the 'guilty mind' was absent."); *Linden*, 254 F.2d at 258 (quoted *supra*); *United States v. Okun*, No. 3:08-CR-132, 2009 U.S. Dist. LEXIS 12419, *19-20 (E.D. Va. Feb. 18, 2009) (quoting *Linden*). These cases clearly demonstrate why the advice of counsel defense is not an affirmative defense as the government contends, but instead should be considered in determining whether an element of the offense, *mens rea*, is lacking.

To determine whether probable cause did or did not exist to charge Ms. Stevens, the grand jury was required to consider whether she had the requisite *mens rea* for the charged offenses. Because the grand jury had evidence of Ms. Stevens' reliance on advice of counsel before it (a fact highlighted by the grand juror's insightful question on the topic), determining

- 8 -

Ms. Stevens' state of mind required consideration of the advice of counsel defense.[3] The instructions provided to the grand jurors, however, effectively directed them to ignore this significant, exculpatory evidence. Although the prosecution may not be required to affirmatively present exculpatory evidence, *see United States v. Williams*, 504 U.S. 36, 51-55 (1992), having put evidence of the participation of other counsel before the grand jury, and having invited legal questions and chosen to respond to the question raised regarding Ms. Stevens' reliance on counsel, prosecutors were obligated not to mislead the grand jurors by instructing them incorrectly that the advice of counsel issue was relevant only at trial, and not in considering whether the evidence showed probable cause to charge.

C. **Where an Incorrect or Misleading Instruction is Provided that Substantially Influences the Grand Jury Proceedings, the Resulting Prejudice Justifies Dismissal of the Indictment**

Ms. Stevens' Supplemental Brief provided numerous examples of courts that have either dismissed indictments based at least in part on erroneous instructions or have held that failure to properly instruct a grand jury is potential grounds for dismissal. *See* Supp. Br. at 5-7; *see also infra*, n.5. Ms. Stevens does not repeat that argument here, but supplements it in light of the colloquy that took place here.

The prosecutors' exchange with the grand jury in this case, now revealed, strongly mirrors the facts of *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991) (cited in Supp. Br. at 3, 5-6). *Peralta* was a drug and gun case, in which the government, conceding it could not prove

---

[3] The government has conceded that the evidence in this case—which is essentially the same evidence that was before the grand jury—establishes the *prima facie* foundation for asserting the advice of counsel defense. *See* United States' Reply to Defendant's Opposition to Motion to Preclude Advice of Counsel Defense (ECF No. 70), at 1.

actual possession of the gun or the drugs, relied in the grand jury a theory of constructive possession. *See id.* at 16-19. In response to repeated questions from grand jurors about the gun, the prosecutor tried to explain the concept of constructive possession, *see id.* at 17-18, but erroneously failed to explain that constructive possession required that the defendant "*knowingly* ha[ve] the power *and the intention* at a given time to exercise *dominion and control* over the object." *Id.* at 19 (emphasis added; citations omitted). Instead, the prosecutor's explanations erroneously stated that constructive possession could be shown by mere *availability* or *accessibility*, without the required elements of knowledge and intent. *Id.* at 19-20. The *Peralta* court found that the prosecutors' statements did not "merely fail to instruct the grand jury on a question of applicable law," but rather, "relied on . . . misleading statements of the meaning of constructive possession." *Id.* at 20 (quoting or paraphrasing the prosecutor's misstatements). Finding that these misleading statements of law seriously prejudiced the defendants, and left "'grave doubt that the decision to indict was free from the substantial influence' of the errors," the *Peralta* court dismissed indictment. *Id.* at 21.[4]

---

[4] *See also United States v. Breslin*, 916 F. Supp. 438, 442-46 (E.D. Pa. 1996) (dismissing the indictment on several grounds, but labeling "most disturbing" the prosecutor's erroneous legal instruction as to the grand jury's deliberation on a conspiracy charge); *United States v. Vetere*, 663 F. Supp. 381, 386-87 (S.D.N.Y. 1987) (dismissing the indictment, *even after a guilty verdict at trial*, on grounds that the independent role of the grand jury was impaired based on the prosecutor's misleading "presentation both with respect to the facts and the law"); *United States v. Tam Ho*, No. 08-00337 JMS, 2009 U.S. Dist. LEXIS 73763, at *7-8 (D. Haw. Aug. 20, 2009) (ordering *in camera* review of prosecutor's legal instructions to the grand jury, and ultimately holding that dismissal of the indictment was not warranted because the transcripts did not show that the prosecutor mis-instructed the grand jury); *United States v. Soliman*, No. 06CR236A, 2008 U.S. Dist. LEXIS 76358, at *15-17 (W.D.N.Y. Sept. 30, 2008) (ordering disclosure of transcripts pertaining to the prosecutor's legal instructions to the grand jury to identify possible prosecutorial misconduct; explaining that "prosecutors advise grand juries of the law but there are limits on the presentation to the grand jury to maintain their independence and to avoid prosecutorial misconduct"); *United States v. Twersky*, No. S2 92 Cr. 1082 (SWK), 1994 U.S. Dist. LEXIS 8744, at *11-16 (S.D.N.Y. June 29, 1994) (ordering *in camera* review to assess whether indictment should be dismissed based on erroneous legal instruction).

Case 8:10-cr-00694-RWT Document 119-11 Filed 03/17/11 Page 11 of 13
Case 8:10-cr-00694-RWT Document 118 *SEALED* Filed 03/16/11 Page 11 of 13

Similarly, here, the prosecutors' response to the grand jury does not show a simple failure to instruct on the advice of counsel defense. Instead, it shows a two-fold affirmative *mis*-instruction: *first*, a misinstruction that the advice of counsel defense is relevant only at trial, and not at the charging stage, and *second*, a misinstruction on the substance of the defense. These misstatements of law—which in the end prevented the grand jury from giving any consideration to Ms. Stevens' reliance on counsel—seriously prejudiced Ms. Stevens and at the very least leaves grave doubt as to whether these errors substantially influenced the grand jury's decision to indict. Dismissal is thus required. *See Bank of Nova Scotia*, 487 U.S. at 256.

### D. The "Administration of Justice" is Not Unduly Burdened by Requiring that the Government Not Affirmatively Misinstruct a Grand Jury, Especially in Response to a Specific Question from the Grand Jury

The government concedes that "a prosecutor can bias a grand jury such that dismissal of an indictment is required," where there is misconduct that actually prejudices the defendant. *See* Gov. Supp. Br. at 6. Yet the government simultaneously attempts to argue that the Court should not correct the highly prejudicial errors that occurred before the grand jury in this case, in part because, according to the government, dismissal of the indictment would lead to "unprecedented disruption in criminal proceedings" generally. *Id.* at 7. The government's argument—which completely fails to account for the holdings of numerous cases dismissing indictments or otherwise recognizing that dismissal is appropriate under analogous circumstances—should be rejected out of hand.

The government appears at places to argue that an Indictment that is valid on its face—*i.e.*, has the charges correctly typed on it—is absolutely immune from attack, regardless of what kind of prejudicial misconduct occurred in the grand jury. That, however, plainly is not the law. The Supreme Court has held that a court may correct misconduct by dismissing an indictment

where (as here) the defendant is prejudiced by the misconduct, such that it substantially influenced the outcome of the grand jury proceedings. *See Bank of Nova Scotia*, 487 U.S. at 256. The Fourth Circuit has done the same, as has this Court. *See United States v. Feurtado*, 191 F.3d 420, 423-25 (4th Cir. 1999); *United States v. Lawson*, 502 F. Supp. 158, 169-73 (D. Md. 1980).

In *Feurtado*, the trial court dismissed an indictment based on the presentation of inaccurate testimony by agents. *See* 191 F.3d at 423-25. The Fourth Circuit stated it did so correctly.[5] *See id.* at 425 ("We are of opinion the district court took the correct course."). It did not, as the government suggests it would, discuss concerns about disruptions in prosecutions that would justify allowing the prejudicial errors to go unrectified. Nor is there any valid reason to allow prosecutors to provide an inaccurate statement of the law that they know is critical to the defense of the subject of their investigation and goes to the very heart of the case.

Under the government's proposed standard, an agent could intentionally provide false testimony to the grand jury—or a prosecutor could intentionally misstate elements of the offense charged (or omit elements at will)—and the court would be powerless to take corrective action, no matter how egregious the misstatement. If this were the case, the grand jury would be no bulwark at all between the accuser and accused. *Bank of Nova Scotia*, however, made clear that where (as here) actual prejudice occurs from misconduct by the government, a district court may and should take corrective action against an indictment that is substantially tainted by the misconduct.

---

[5] In fact, the primary issue on appeal in *Feurtado* regarding the indictment was whether it should have been dismissed with prejudice instead of without. The Fourth Circuit held that the district court "correctly chose a more narrowly tailored remedy and dismissed the indictment without prejudice" because "the presentation of the objectionable portions" of the testimony was "inadvertent." *Id.* at 425.

## CONCLUSION

In light of the foregoing, Ms. Stevens respectfully requests that the indictment be dismissed.

Respectfully Submitted,

Dated: March 16, 2011

By: /s/ William T. Hassler

Reid H. Weingarten
William T. Hassler
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-3000

Brien T. O'Connor
Ropes & Gray LLP
Prudential Tower, 800 Boylston Street Boston, MA 02199-3600
(617) 951-7000

Colleen A. Conry
Ropes & Gray LLP
One Metro Center
700 12th Street, NW, Suite 900 Washington, DC 20005-3948
(202) 508-4600

*Counsel for Defendant Lauren Stevens*