UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **FILED UNDER SEAL** |
| ) | |
| v. ) | No. 10-cr-694-RWT |
| ) | |
| LAUREN STEVENS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY BRIEF
IN SUPPORT OF MOTION FOR BILL OF PARTICULARS**

Defendant Lauren Stevens respectfully submits this reply brief in support of her motion for a bill of particulars (Doc. # 23).

The government points to the Indictment's descriptions of certain alleged false statements in GSK's response letters (namely, the statements charged as false statements under § 1001), and claims the defense is entitled to no more. But Ms. Stevens does not seek particularization of what is already in the Indictment. For instance, she does not seek particularization of the false statement counts (Counts Three through Six), because the Indictment specifies which statements are allegedly false and the government is limiting itself to those statements.[1]

Rather, Ms. Stevens seeks particularization of what is *not* specified in the Indictment, in light of the government's express indication that for the obstruction counts (Counts One and Two), the prosecution intends to rely on allegedly false or misleading statements or omissions that are *not* detailed in the Indictment. It is for these extra-indictment allegations that Ms. Stevens seeks particularization, to permit her to prepare her defense and to prevent unfair surprise at trial.

---

[1] Doc. 23 at 1 n.1; Doc. 23-1 at 3; *see* Ind. at 13, 15, 16, 18 (identifying the statements alleged to be false and the ways in which they are false).

1

## The Requested Information

**Count One ("Obstruction of a Proceeding")** alleges Ms. Stevens obstructed the FDA's inquiry "by *making false and misleading statements* to the FDA, and by *withholding and concealing documents and other information* about promotional activities by [GSK] for [Wellbutrin] ...." Ind. at 11 (emphasis added).

In this motion, Ms. Stevens respectfully asks, for the above count, what statements does the government contend were false and misleading? And what documents or other information does the government contend she concealed or withheld? Doc. # 23 at 2, § A.1-2.

**Count Two ("Falsification/Concealment of Documents")** alleges that, with intent to impede the FDA's inquiry, Ms. Stevens "*sent false letters, falsified and altered documents*, and *concealed and covered up evidence of promotional activities* including gifts and entertainment by [GSK] for [Wellbutrin], including for unapproved uses." Ind. at 12 (emphasis added).

Ms. Stevens respectfully asks, for the above count, what letters does the government are false? What documents does the government contend Ms. Stevens falsified and altered? And what evidence, *i.e.*, what documents and tangible objects, does the government allege Ms. Stevens concealed and covered up? Doc. # 23 at 2, § B.1-3.

Ms. Stevens understands the Indictment's allegations regarding the specific statements the Indictment describes as false.[2] She also understands the allegations that she withheld certain slide sets obtained from Dr. P, Dr. H, and Dr. F,[3] and certain information regarding alleged compensation of conference attendees.[4] Ms. Stevens does not seek re-particularization of these allegations.

---

[2] Ind. ¶¶ 28-31, 32-33, 37, 40-41 (incorporated in Ind. at 11 ¶ 1, 12 ¶ 1); *see* Gov. Opp. to Def. Mot. for Bill of Particulars ("Gov. Opp."), Doc. 52, at 2-3, 5.

[3] *See* Ind. ¶¶ 21-24, 27, 34-36, 38-39; Gov. Opp. at 2, 5-6.

[4] *See* Ind. ¶ 33; Gov. Opp. at 5-6.

2

The particulars that Ms. Stevens seeks are what conduct, *i.e.*, what falsification and concealment, will the government seek to prove at trial *in addition to* the conduct set out in Paragraphs 28-41 of the Indictment? Ms. Stevens' concern that she not be surprised at trial by attempts to prove conduct beyond the indictment is not idle speculation—the government's Opposition itself specifically alerts the defense to two instances of extra-indictment conduct the government intends to prove.[5]

If the government were content to limit itself to these two claims (in addition to other allegations specified in the Indictment itself) this motion would be moot. The government, however, makes clear that it does not purport to limit itself to the two examples provided, or to accept any limits at all on the proof it may offer at trial. Instead, the government appears to believe it is entitled to continue to come up with new allegations of false or misleading statements or omissions right up through trial.[6] That is not the law. The defendant is entitled to fair notice in the indictment of the alleged wrongdoing that she must defend against at trial, and to a bill of particulars to permit her to prepare her defense and to avoid unfair surprise.

GSK's seven substantive response letters to the FDA's Wellbutrin inquiry total more than 50 pages, and contain hundreds of representations about scores of different topics.[7] In response to the FDA's broad requests for documentation, they attach a large number of appendices and exhibits containing various training, educational and promotional materials, correspondence, spreadsheets, program records, and other information. In total, these response materials contain

---

[5] The two issues relate to (i) statements and alleged omissions concerning continuing medical education ("CME") programs about Wellbutrin and (ii) a statement that discusses the fact that less than 1% of the Wellbutrin speaker programs identified in the GSK letters had off-label topics. *See* Gov. Opp. at 7-8.

[6] *See* Gov. Opp. at 9-11 (arguing the government may not be required to "limit or freeze" its proof at trial).

[7] GSK's seven substantive letters are attached hereto as Exhibit 1.

3

over a thousand pages, and thousands of potentially distinct statements on a wide variety of subjects. To prepare for trial, and to prevent unfair surprise, Ms. Stevens needs a simple response: particularization of what statements or omissions, within those response packages (or elsewhere if the government so alleges), the government intends to prove were false or misleading.[8] Ms. Stevens "should not have to waste precious pre-trail preparation time guessing which statements [s]he has to defend against ... when the government knows precisely the statements on which it intends to rely and can easily provide the information." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998). Principles of fair notice do not allow the government to hide or move the target up through trial.[9]

---

[8] Two examples of the potential problems faced by the defense should suffice for illustration. First, GSK's response letters contain detailed information about studies, meetings, and speeches by Dr. James Anderson, Dr. Donna Ryan, and Dr. Owen Wolkowitz. *See* Feb. 28, 2003 letter at 10-14 (Dr. Anderson); *id.* at 15-16 (Dr. Ryan); April 28, 2003 letter at 1-7 (Dr. Wolkowitz) (all within Ex. 1). Some of this information is quite technical about issues of on-label versus off-label promotion. If the government intends to challenge any of this type of information as false or misleading to support its obstruction charges, Ms. Stevens needs to know that in order to prepare her defense.

Second, GSK's March 28, 2003 letter attached spreadsheets listing approximately 8,000 different speaking events in 2001 and 2002. If the government intends to offer proof that any specific information contained in those spreadsheets was obstructive, Ms. Stevens should know so that she can prepare her defense. The defense is already aware of the government's allegation regarding the absence of a column on the spreadsheet regarding information alleged to relate to compensation, *e.g.*, Ind. at 15. The question remains, however, whether there is other information in these large spreadsheets (beyond what is specifically described in the Indictment) that the government will contend was false or misleading.

These two examples are not intended to be exclusive. Rather, they merely illustrate the difficult and voluminous data potentially at issue in this matter, which will depend entirely on the government's contentions as to what it deems to be charged conduct.

[9] By seeking particularization of details not contained in the indictment, Ms. Stevens does not concede that proof outside the Indictment's allegations is admissible at trial or may form the basis for conviction. Under the Sixth Amendment's notice clause, the Fifth Amendment's due process clause, and the Fifth Amendment's grand jury clause, Ms. Stevens may be convicted only for conduct set out in the Indictment. *See Russell v. United States*, 369 U.S. 749, 760-61, 770-71 (1962); *Stirone v. United States*, 361 U.S. 212, 217-19 (1960); *United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994); *United States v. Burr*, 25 F. Cas. 59, 172 (C.C.D. Va. 1807) (Marshall, C.J.) ("[T]he [defendant] can only be convicted on the overt act laid in the indictment.

4

## ARGUMENT

I. THE DEFENDANT IS ENTITLED TO FAIR NOTICE OF THE ALLEGED CONDUCT SHE MUST DEFEND AT TRIAL

   A. The Defendant is entitled to notice of all of the conduct the government will attempt to prove

The "'first and most universally recognized requirement of due process'" is that a defendant have notice of the charges against him. *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted). "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ...." U.S. Const. amend. VI. The requirement that the charges be fixed in writing in advance of trial stems from the Sixth Amendment, the Fifth Amendment's Due Process clause, and the Fifth Amendment's requirement of indictment by grand jury. *See Russell v. United States*, 369 U.S. 749, 760-61 (1962); *accord United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (en banc).

It is not enough, as the government suggests, for the indictment simply to "set[] forth the elements of each of the offenses and the relevant time periods." Gov. Opp. at 6; *see also id.* at 4 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). For a charging document to give sufficient notice, "facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances." *United States v. Hess*, 124 U.S. 483, 487-88 (1888). Thus, the indictment must contain "a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 487; *accord Russell*, 369 U.S. at 765; *Hamling*, 418 U.S. at 117-18; *Hooker*, 841 F.2d at 1227-28 ("[I]n testing the sufficiency of an indictment, 'it is the statement of facts in the pleading ... that

---

With respect to this prosecution, it is as if no other overt act existed."). Ms. Stevens has filed a motion in limine to exclude evidence not relevant to the allegations in the Indictment, and reserves her right to object to specific evidence offered at trial on this basis.

5

is controlling[.]'"); Fed. R. Crim. P. 7(c)(1) (indictment must contain "a plain, concise and definite written statement *of the essential facts* constituting the offense charged") (emphasis added).

When an indictment fails to meet these fundamental requirements, the Court should order the government to provide a bill of particulars, "to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial." *United States v. Automated Med. Labs.*, 770 F.2d 399, 405 (4th Cir. 1985) (citing *United States v. Schembari*, 484 F.2d 931 (4th Cir. 1973)); *see also United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989) ("The purpose of a bill of particulars is to inform the defendant of the charges against him in sufficient detail and to minimize surprise at trial.").

**B.   The Indictment does not give adequate notice of all conduct the government will try to prove to support the Obstruction charges in Counts One and Two**

The government relies on the Indictment's extensive allegations regarding the false statements charged in Counts Three through Six to argue that "[t]his is no bare bones indictment," Gov. Opp. at 5, and that "the detailed 19-page speaking indictment" gives more than adequate notice. *Id.* at 1. If the government were limiting itself to the factual conduct described in the Indictment, no bill of particulars would be necessary.[10] It is the government's insistence that it may try to prove alleged falsification, omission or concealment *not* detailed in the Indictment that necessitates a bill of particulars.

Although the government's opposition brief recites at length the Indictment's detailed allegations regarding certain statements specifically alleged to be false, Gov. Opp. at 1-3, 5-6, the government admits, but quickly glosses over, its intention to introduce statements *or omissions* in support of the obstruction counts which are *not* described in the Indictment. Gov. Opp. at 7-8.

---

[10] Indeed, Ms. Stevens does not seek particularization of the false statements counts (Counts Three through Six), because the government has stated it will limit its proof on those counts to what is specified in the Indictment. Doc. 23 at 1 n.1; Doc. 23-1 at 3.

6

Those statements or omissions may concern topics nowhere addressed in the Indictment. *See supra* at 3-4 & n.8 (describing the particular types of information requested by this motion).

The statements that are *not* specified in the Indictment—not the many statements that are—are the subject of this motion. If the government is permitted to introduce proof related to statements or omissions nowhere described in the Indictment, the Defendant will be unfairly surprised at trial and unfairly hampered in preparing her defense. By contrast, if the government is limited at trial to the conduct alleged in detail in the Indictment—the allegations to which the government points in opposing this motion—then particularization would be unnecessary.

The package of GSK response letters to the FDA on which the government intends to rely comprises over a thousand pages and contains hundreds or thousands of representations on a wide variety of topics. Only a handful of those statements are specified in the Indictment as being allegedly false or misleading. It is unfair to expect the Defendant, in the limited time between now and trial, to have to pore through all of the response letters and their attachments in search of additional representations—*or omissions*—that the government might contend are false or misleading, to prepare to defend against them all. "A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against ... when the government knows precisely the statements on which it intends to rely and can easily provide the information." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998); *see* Doc. # 23-1 at 4.

Indeed, the government has acknowledged the requirement that it specify the false statements at issue in § 1001 charges, by providing such specificity in the Indictment for Counts Three through Six.[11] The government should not be able to free itself from this fundamental fair

---

[11] *See* Ind. at 13-18; *see also id.* ¶¶ 28-31, 32-33, 37, 40-41.

notice requirement by the expedient of charging false or misleading representations or omissions under obstruction statutes rather than the false statement statute. *See* Ind. at 11, lines 8-10 (Count One); *id.* at 12, lines 10-12 (Count Two).

## II. DISCOVERY IS NOT A SUBSTITUTE FOR A BILL OF PARTICULARS

The government contends that the voluminous discovery provided in this case obviates the need to specify the conduct it will attempt to prove at trial. Gov. Opp. at 7-8. Far from that being the case, if anything the huge volume of discovery highlights the need for particularization of the charges to allow adequate preparation of a defense. This is especially true given the very short time before trial.

Discovery "may not be automatically be relied on by the Government as an adequate substitute for a straightforward identification in a bill of particulars of the [details] of offenses that the prosecution intends to prove." *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988); *see also Trie*, 21 F. Supp. 2d at 21 (open file discovery no substitute for adequate specification of charges against the defendant). In the cases the government cites the defendants received adequate notice by a variety of other means, including not only discovery but also representations at pretrial conferences,[12] colloquies at oral argument,[13] an indictment that "described the defendants' scheme in detail and provided dates, places, and the persons involved in various transactions,"[14] and *the provision of a bill of particulars* (though not as detailed as defendants sought).[15] Notably, unlike informal representations between counsel (on which the

---

[12] *United States v. Vasquez*, 867 F.2d 872, 874 (5th Cir. 1989).

[13] *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004).

[14] *United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995).

[15] *United States v. Soc'y of Ind. Gasoline Mktrs.*, 624 F.2d 461, 466 (4th Cir. 1980).
In one case the government cites, *United States v. Amend*, 791 F.2d 1120 (4th Cir. 1986), the lead defendant's counsel "*admit[ted]* that prior to trial he obtained all necessary information from the government's files," thus conceding no prejudice from denial of a bill of particulars. *Id.*

8

government in part seeks to rely here, Gov. Opp. at 7-8), those cases involved representations to the court which served to narrow the issues at trial. *See also* Sec. III, *infra*.

In cases such as this, a large volume of discovery documents can only highlight the need for a bill of particulars specifying which representations the government contends are false. A defendant should not "be forced to comb through [a] veritable mountain of documents and to attempt to guess which of the numerous transactions documented therein ... are alleged by the government to have been improper." *United States v. Savin*, No. 00 CR 45 (RWS), 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (mail and wire fraud case involving allegations of complex inter-company transfers, where government provided 85 boxes of discovery totaling over 100,000 pages).[16] Here, where the documents in which allegedly false statements or omissions might be found run for hundreds of pages, and involve thousands of statements and unknowable alleged omissions, there is no reason fairness does not require the government to disclose what it already knows and can easily provide: identification of the statements it contends were false. *Trie*, 21 F. Supp. 2d at 21. This is especially true where the discovery on which the government relies as a substitute for particularity runs to more than fifteen million pages and counting.[17]

---

at 1125. The other defendant challenged the indictment's specificity only with respect to the government's seeking forfeiture of property, where the court held that the indictment and the prosecution's "open file" policy gave the defendant adequate notice of the government's intent to seek forfeiture. *Id.*

[16] *See also United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987), (reversing mail fraud conviction for denial of bill of particulars; the "Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified"); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (bill of particulars necessary where Government produced more than 200,000 documents relating to 2,000 Medicare claims); *United States v. DeGroote*, 122 F.R.D. 131, 143 (W.D.N.Y. 1988) ("While the practice of voluntary discovery is to be encouraged, ... it may not substitute for straightforward identification in a bill of essential matters that the defendant needs to avoid surprise at trial ....").

[17] In addition to the 15 million pages of raw documents, the government has produced approximately 200 memoranda of interviews of potential witnesses and more than 70 grand jury

### III. THE GOVERNMENT'S EFFORT TO MAINTAIN FLEXIBILITY IN THE CHARGES VIOLATES MS. STEVENS' RIGHT TO FAIR NOTICE

Finally, the government's argument that it "is not appropriate to limit or freeze the government's proof" (Gov. Opp. at 9) violates the most basic notion of due process—that the charges must be fixed in writing in advance of trial. *See, e.g., Bousley*, 523 U.S. at 618 ("'real notice of the true nature of the charge'" is "'the first and most universally recognized requirement of due process'") (citation omitted); *see also United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) ("A bill of particulars is a statement of what the government will or will not claim in its prosecution."). Advance notice of the charges is one of the most basic requirements of the Sixth Amendment. U.S. Const. amend. VI (quoted *supra* at 5).

Without fixed notice of the charges, the defendant would be required to defend against a moving target. *Russell*, 369 U.S. at 766, 770-71; *United States v. Klein*, 139 F. Supp. 135, 139 (S.D.N.Y. 1955). The prosecution would be "free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell*, 369 U.S. at 768. Indeed, the government protests here that it should not be required to "lock in place and disclose" its allegations before trial. Gov. Opp. at 10. It is plain the government wants to be able to develop (*i.e.*, to potentially change or add to) its obstruction allegations (Counts One and Two) right up until trial. This is precisely the type of surprise that the Fifth and Sixth Amendments and Rule 7 do not permit. *See Russell*, 369 U.S. at 766, 768, 770-71; *Klein*, 139 F. Supp. at 139.

---

transcripts.

    Notably, the government has had *eight years* to review the materials produced. (The earliest witness interview at issue dates from early 2003.) Ms. Stevens' counsel, on the other hand, has received these materials over the last three months. In these circumstances, it is hard to take seriously the contention that Ms. Stevens' counsel is on an even footing with the government in reviewing this material because it has been provided to the defense in "the same format in which it is available to the government"—*i.e.*, computer readable form. *See* Gov. Opp. at 7.

10

In arguing that a bill of particulars cannot limit its proof, the government misses a critical distinction—between disclosure of the *offense conduct* charged against the defendant (*i.e.*, what she is alleged to have done wrong), and disclosure of the *evidence* used to prove that conduct. *Evidentiary* disclosure is not required, as it is accepted that a bill of particulars is not a discovery device. *See, e.g., United States v. Johnson*, 504 F.2d 622, 628 (7th Cir. 1974) (bill of particulars does not entitle defendants to purely evidentiary matters). By contrast, disclosure of the *conduct* charged to be criminal is fundamentally required—it is the first requirement of a fair trial under the Sixth Amendment's Notice clause, the Fifth Amendment's Due Process clause, and the Fifth Amendment's Grand Jury clause. *See Russell*, 369 U.S. at 760-61; *Hooker*, 841 F.2d at 1230.

In a prosecution based on alleged false statements, it is easy to conflate these concepts because the *conduct* alleged to be criminal and the *evidence* of that conduct may be reflected on the same piece of paper—the allegedly false written statement. But the fact remains that the written statement itself is the act alleged to be criminal. It is that act—the conduct alleged to constitute the crime—that must be fixed in writing and disclosed to the defendant before trial, to enable him to prepare his defense without surprise. *See Hess*, 124 U.S. at 487-88; *Hooker*, 841 F.2d at 1227-28 (quoted in Sec. I.A, *supra*). The government may not avoid disclosure, and shift its case right up until trial regarding which act is alleged to constitute the charged offense, simply because identifying the charged statement would disclose part of the government's evidence. *See United States v. Rogers*, 617 F. Supp. 1024, 1027-28 (D. Colo. 1985); *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971); *United States v. Smith*, 16 F.R.D. 372, 375 (W.D. Mo. 1954) (quoted in Doc. # 23-1 at 2). Notice of the charged conduct—the allegedly false statement—is precisely what is required by the Constitution and by Rule 7(c) and 7(f). *See Russell*, 369 U.S. at 760-61; *Hooker*, 841 F.2d at 1230.

Thus, in prosecutions based on false statements, courts have consistently required the government to identify the statements alleged to be false. This is true both for prosecutions under § 1001,[18] and for other prosecutions predicated on alleged false or fraudulent statements.[19] Obstruction of justice charges premised on submission of false statements are no different. *See* Ind. at 11, 12.[20]

---

[18] *See Automated Med. Labs.*, 770 F.2d at 400, 405; *Trie*, 21 F. Supp. 2d at 21-22; *United States v. Clifford*, 426 F. Supp. 696, 703 n.4 (E.D.N.Y. 1976) (discussed in Doc. 23-1 at 2).

[19] *See Bortnovsky*, 820 F.2d at 573, 574-75 (mail fraud, conspiring to defraud United States, and RICO); *Savin*, 2001 WL 243533, at *3 (mail and wire fraud); *Nachamie*, 91 F. Supp. 2d at 567-68, 571 (Medicare fraud, mail fraud, and false claims, *see United States v. Nachamie*, 91 F. Supp. 2d 552, 554 (S.D.N.Y. 2000)); *Rogers*, 617 F. Supp. at 1026, 1029 (mail fraud, racketeering, fraudulent interstate transactions, aiding and abetting filing false tax returns, conspiracy to obstruct justice, subornation of perjury, and perjury) ("General allegations of false statements and testimony are not sufficient. This criminal case should not differ from any civil matter where allegations of fraud and misrepresentations must be pleaded with particularity under Fed. R. Civ. P. 9(b). In fact, application of this rule in criminal cases is even more compelling than in civil matters because defendants' liberty interests are at stake.").

[20] Most of the cases cited by the government (Gov. Opp. at 9-10) are conspiracy cases, which require a lesser degree of particularity as to the objects of the conspiracy than is required in prosecutions for substantive offenses. *See Wong Tai v. United States*, 273 U.S. 77, 78 (1927); *United States v. DiCesare*, 765 F.2d 890, 894 (9th Cir. 1985); *Johnson*, 504 F.2d at 624-25; *United States v. Addonizio*, 451 F.2d 49, 53 (3d Cir. 1971); *United States v. Feola*, 651 F. Supp. 1068, 1079-80 (S.D.N.Y. 1987); *United States v. Persico*, 621 F. Supp. 842, 850 (S.D.N.Y.), *aff'd*, 774 F.2d 30 (2d Cir. 1985); *United States v. Wilson*, 565 F. Supp. 1416, 1421 (S.D.N.Y. 1983), *aff'd*, 750 F.2d 7 (2d Cir. 1984); *United States v. Mannino*, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979).

The government's cases also for the most part are not false statement cases. *See Wong Tai*, 273 U.S. at 78 (drug conspiracy); *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986) (continuing criminal enterprise); *DiCesare*, 765 F.2d at 897 (conspiracy and weapons); *Johnson*, 504 F.2d at 624-25 (transporting stolen goods and conspiracy); *Addonizio*, 451 F.2d at 53 (extortion and conspiracy); *Feola*, 651 F. Supp. at 1079 (drug conspiracy and firearms); *Persico*, 621 F. Supp. at 850 (RICO conspiracy); *Wilson*, 565 F. Supp. at 1421 (conspiracy to kidnap and murder prosecutors and witnesses); *United States v. Boffa*, 513 F. Supp. 444, 454 (D. Del. 1980) (labor racketeering); *Mannino*, 480 F. Supp. at 1185 (drug conspiracy).

In the one false statements case cited by the government, the court, while reserving ruling on the bill of particulars, required the government to identify which entries it alleged were false. *See Automated Med. Labs.*, 770 F.2d at 405.

## CONCLUSION

For the foregoing reasons, this Court should grant the Defendant's Motion for a Bill of Particulars.

Respectfully Submitted,

Dated: March 4, 2011

By: /s/ _____

Reid H. Weingarten
William T. Hassler
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-3000

Brien T. O'Connor
Ropes & Gray LLP
Prudential Tower, 800 Boylston Street Boston, MA 02199-3600
(617) 951-7000

Colleen A. Conry
Ropes & Gray LLP
One Metro Center
700 12th Street, NW, Suite 900 Washington, DC 20005-3948
(202) 508-4600

*Counsel for Defendant Lauren Stevens*