William T. Hassler
202.429.6469
whassler@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

April 25, 2011

Honorable Roger W. Titus
United States District Court
District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

Dear Judge Titus:

    Counsel for Defendant Lauren Stevens has become aware of the Government's intent to offer three categories of documents as demonstratives and/or exhibits: various documents recently manually highlighted by Julie Lemieux at the request of the government,[1] summary charts and exhibits of Ms. Stevens' earnings, and exhibit of King & Spalding's earnings from GSK. Through this letter, Ms. Stevens respectfully requests that, pursuant to Rules 401 through 403 of the Federal Rules of Evidence, the Court exclude the use of these demonstrative exhibits.

## I.    Legal Standard

    The standard for admissibility is clear: evidence must be relevant, and its probative value must not be "substantially outweighed" by its potential for prejudice. "Relevant evidence is evidence that has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Hedgepeth*, 418 F.3d 411, 419-20 (4th Cir. 2005) (quoting Fed. R. Evid. 401). Evidence that neither advances nor counters an element of the charges is irrelevant. *See id.* at 420; *United States v. Prince-Oyibo*, 320 F.3d 494, 501-02 (4th Cir. 2003). Even if relevant, evidence should be excluded under Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *Hedgepeth*, 418 F.3d at 420. Rule 403 applies to demonstrative

---

[1] In an April 22, 2011 letter, the Government represented to Defense Counsel that the documents highlighted by Julie Lemieux are "chalks" and that it has no intention to move them in at trial as substantive evidence. The Government also included highlighted versions of Defendant's notes by Jack Hetzel, notes taken by Jack Hetzel while highlighting Defendant's notes, a timeline, and an index of defendant's letter to FDA. The Government has also represented to Defense Counsel that it has no intention to move these documents in at trial as substantive evidence. Should the government move to enter into evidence any of the aforementioned documents as exhibits during the trial, the Defendant reserves the right to raise additional objections at that time.

exhibits in the same way that it applies to any other evidence offered at trial. *Burchfield v. CSX Transp., Inc.*, No. 09-15417, 2011 U.S. App. LEXIS 6505, at *15 (11th Cir. Mar. 30, 2011) (quoting *United States v. Gaskell*, 985 F.2d 1056, 1060 (11th Cir. 1993)) ("Further, experimental or demonstrative evidence, like any evidence offered at trial, should be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'").

Each category of exhibits discussed here fails this test.

## II. Documents Highlighted by Julie Lemieux

We understand that the government plans to present to the jury a variety of demonstrative exhibits consisting of documents recently highlighted by Julie Lemieux, a paralegal at GSK. The documents fall into two broad categories: copies of various speaker events spreadsheets, and a list of materials that GSK maintained during the investigation. Specifically, according to its April 22, 2011 letter to the defense (attached hereto as App. A), the government plans to show the jury the following:

- "Highlighting Julie Lemieux began doing this week to speaker database spreadsheet not organized alphabetically, but did not complete" (attached hereto as App. B);

- "Highlighting Julie Lemieux did to non-PRIDE database spreadsheet organized alphabetically" (attached hereto as App. C);

- "Highlighting Julie Lemieux did to PRIDE database spreadsheet 2001" (attached hereto as App. D);

- "Highlighting Julie Lemieux did to PRIDE database spreadsheet 2002" (attached hereto as App. E); and

- "Highlighting Julie Lemieux did to list of materials in GSK's possession during time period of FDA inquiry" (attached hereto as App. F).

These documents are misleading, unfairly prejudicial, and will tend to confuse the jury.

### A. The Highlighted Spreadsheets

The highlighted non-PRIDE and PRIDE spreadsheets that the Government may use as demonstrative exhibits are grossly misleading and unfairly prejudicial. The underlying spreadsheets list speaker presentations made during 2001-02. Based on the letter sent by the Government, it appears that Ms. Lemieux was asked by the Government to go through the spreadsheets and highlight the names of certain doctors who provided potentially off-label slide decks to the GSK legal team in 2002 and 2003, as well as the names of Drs. Hudziak and Modell. The Defense is concerned that the Government intends to use these documents to suggest that an off-label presentation was made each time one of these speakers presented.

This use of the demonstrative would be misleading. As an initial matter, the Government has not established its apparent premise, that speakers who sent in slides containing potentially off-label content were actually presenting off-label information, and doing so affirmatively (in violation of GSK policy and FDA regulation) rather than merely in response to questions (which would be consistent with GSK policy and FDA regulations). Furthermore, the spreadsheets that Ms. Lemieux highlighted contain only the title of each presentation listed; they do not indicate the substantive content of those presentations. Ms. Lemieux would not be able to testify about whether each of the speakers' live presentations incorporated off-label content, because she did not attend the actual presentations.[2] Nor could she testify whether any off-label information was inappropriately used affirmatively by the speaker, or appropriately to answer questions.

A comparison of the spreadsheets to the slide decks submitted shows that the speakers may not have even used these particular slide decks at the events listed in the spreadsheets. The titles and topics listed in the spreadsheets do not necessarily match the titles of the slide decks provided to GSK by the doctors. For example, Dr. Mark McClung appears 23 times in the Speaker Event Database, but the titles of the slide decks he submitted to GSK are not listed for his presentations on any of those 23 occasions. Likewise, Dr. Jeffrey Green spoke 67 times during the relevant time period; fewer than five of the topics listed for those presentations can be definitively linked to the slide deck he in fact sent to GSK. Dr. John Rush spoke 17 times, and again, fewer than five of the listed topics can be definitively linked to the slide decks he submitted to GSK. But the proposed demonstrative exhibits do not make this distinction. The highlighted spreadsheets would thus allow the government to suggest, without proving, that the speakers at the highlighted events presented off-label at those events using the same slide decks submitted to the GSK legal team.

The only way that the government could establish the substance of the live presentations would be through testimony of either the speakers themselves or GSK employees who actually attended these presentations – neither of which the Government intends to do. The Defendant should not suffer such unfair prejudice because the Government has chosen not to do so. Absent such testimony, no amount of highlighting on the spreadsheets alone can establish widespread off-label promotion. The proposed demonstrative exhibits would therefore be misleading – suggesting that the government had established facts that it had not – and therefore, the use of these documents should be precluded. *See Burchfield*, 2011 U.S. App. LEXIS 6505, at *15; *United States v. Spoerke*, 568 F.3d 1236, 1250 (11th Cir. 2009) (quoting *United States v. Gaskell*, 985 F.2d 1056, 1060 (11th Cir. 1993)) ("Demonstrative evidence is subject to Federal Rule of Evidence 403 and 'should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'")

B.   **The Highlighted List of Materials**

The Government also apparently asked Ms. Lemieux to highlight a list of materials that GSK kept during the relevant time period. *See* App. F hereto. This highlighted demonstrative

---

[2] Because Ms. Lemieux does not have independent knowledge as to the content of the affirmative presentations, it would also be inappropriate to use her as a witness to testify about this document and the presentations as a whole.

has no apparent probative value and would confuse the issues. There is, simply, no discernable pattern to Ms. Lemieux's highlighting. And because the highlighting was apparently done at the government's request, it is not clear that Ms. Lemieux can testify regarding whatever the government is attempting to prove through this exhibit.

### III.   The Defendant's Earnings

The government seeks also to introduce a summary of "Lauren Stevens Payments from GSK" (attached hereto as App. G). This summary is largely irrelevant; it is also significantly more prejudicial than probative and thus would lead to "unfair prejudice" and "confusion of the issues." Fed. R. Evid. 403; *Hedgepeth*, 418 F.3d at 420.

As an initial matter, the summary extends from 2002 through 2010. Ms. Stevens' earnings in 2004 through 2010 have no relevance to the time period of the charged conduct, which occurred in 2002-03. Such evidence, which neither advances nor counters an element of the charges, is irrelevant. *See Hedgepeth*, 418 F.3d at 420; *United States v. Prince-Oyibo*, 320 F.3d at 501-02. Not only is the evidence irrelevant, but the inclusion of six to seven years of irrelevant data allows the government to provide an inflated "total" income as the bottom line. This presentation would at best confuse the jury and at worst prejudice the defendant. (For the same reasons, Defendant objects to the underlying source of Ms. Stevens' earning information, a 156-page "Earning History" currently marked as Govt. Ex. 107.)

The government's summary is also misleading and prejudicial because it is overinclusive. The government has presented Ms. Stevens' earnings as "Regular Pay" and "Other Pay," without giving any indication of what constitutes the "Other Pay" (and thus creating an exaggerated picture of Ms. Stevens' earnings). The summary is overbroad in several respects:

- First, the gross pay for 2010 includes Ms. Stevens' $346,934 in severance earnings, which she – among other employees – received in a buyout. Yet the government's summary nowhere indicates that a significant portion of the "Total Gross Pay" for 2010 is attributable to this one-time payment.

- Second, the government's summary includes pay in the form of certain stock and stock options. Payments from stock and stock options reflect the Company's performance and the employee's grade; not the efforts of the individual employee. They also further inflate Ms. Stevens' earnings and offer little of relevance to the case.

- Third, the "Total Gross Pay" for every year includes imputed income in the form of life insurance and similar benefits provided by GSK to employees. By presenting these benefits as a dollar figure, the government inflates Ms. Stevens' pay.

In short, the government seeks to suggest that Ms. Stevens has received hundreds of thousands of dollars in bonuses each year in the form of "other pay" – a suggestion that would distract and mislead the jury and create an inaccurate portrait of Ms. Stevens' employment. Even Ms. Stevens' actual bonuses did not depend on her work on FDA's Wellbutrin inquiry; she

continued to handle all of her usual work during this time. The link between her compensation and the charged conduct is thus tenuous at best. In such a case, where evidence "would divert the jury from the issues raised in the indictment," and where the probative value of such evidence is "substantially outweighed by the distraction it would cause," the evidence should be excluded. *See United States v. LaRouche*, 896 F.2d 815, 826-27 (4th Cir. 1990).

## IV. The King & Spalding Invoices

The Government also seeks to use a list of all King & Spalding earnings from GSK for the years 1999 to 2011 (Exhibit 227, attached hereto as App. H). Because this exhibit is only minimally relevant, but potentially quite prejudicial, it should not be permitted to be entered into evidence or used as a demonstrative at any point during this trial.

The government's exhibit, summarizing twelve years of payments by GSK to King & Spalding, is significantly overbroad. The summary relates not only to Mark Brown, Mark Jensen, and Nikki Reeves – the attorneys who worked with Ms. Stevens on this matter – but to *all* King & Spalding attorneys who worked for GSK on *all* matters. Nor is the twelve-year time period of Exhibit 227 relevant to this case. Payments made to other King & Spalding attorneys seven years after the conduct charged is not even arguably relevant to Ms. Stevens' actions or intent in 2002 and 2003.[3] Such evidence is properly excluded. See *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) ("[T]he Constitution permits judges 'to exclude evidence that is . . . only marginally relevant [ ] or poses an undue risk of [ ] harassment, prejudice, [or] confusion of the issues.'") (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986)).

The exhibit should also be excluded on the ground that it is likely to prejudice the defendant. Rule 403 requires excluding evidence "in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Van Metre*, 150 F.3d 339, 350 (4th Cir. 1998) (internal quotation omitted). Here, the jury may be distracted and biased by high dollar amounts (over $263 million over twelve years) – especially where the amounts are divorced of any meaningful context or any indication of the legal work underlying those invoices. Attempts to justify these invoices by explaining the breadth of GSK's legal needs and the market for legal services would result in an irrelevant mini-trial. When evidence might "divert the jury from the issues raised in the indictment" it has been excluded because its probative value would be "substantially outweighed by the distraction it would cause." *United States v. LaRouche*, 896 F.2d 815, 826-27 (4th Cir. 1990).

\*\*\*

Each of these proposed demonstratives thus poses a substantial risk of unfairly prejudicing Ms. Stevens and confusing the jury. *See, e.g., Hedgepeth*, 418 F.3d at 420-21 (citing

---

[3] The Defendant does not object to the use of the King & Spalding invoices to GSK for the period 2002 to 2003, for work relating to the FDA's inquiry into Wellbutrin (Exhibit 226, attached hereto as App. H).

*United States v. Grossman*, 400 F.3d 212, 218-19 (4th Cir. 2005); *see also United States v. Koger*, 646 F.2d 1194, 1197-98 (7th Cir. 1981) (excluding under Rule 403 evidence that was "not shown to have anything to do with the charges against the [defendant]" and invited the jury to speculate as to how the evidence showed the defendant's guilt). For this reason, the demonstratives discussed here should be excluded.

Respectfully,

William T. Hassler

Enclosures